IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| YAZOO PIPELINE CO., L.P., et al., | § § | NO. 08-38121 (Chapter 11) |
| Debtors. | § § | (Jointly Administered) |
| AMEGY BANK, N.A., | § § | |
| Plaintiff, | § § | |
| VS. | § § | ADV. NO. _____ |
| STERLING EXPLORATION & PRODUCTION CO., L.L.C., ROBERT CHARLES CHEATHAM, and PATRICIA LYNN CHEATHAM, | § § § § § § | |
| Defendants. | § | |

**COMPLAINT OBJECTING TO
DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. SECTION 523(a)**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, AMEGY BANK, N.A., a creditor and party-in-interest in this case, and files this its Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. Section 523(a), and in support thereof would show the Court as follows:

Jurisdiction

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b) and § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Venue

2. Venue is proper under 28 U.S.C. § 1409.

Parties

3. Plaintiff ("Amegy") is a creditor and party-in-interest in the above referenced bankruptcy case. Amegy is a national bank lawfully operating in the State of Texas.

4. Defendant STERLING EXPLORATION & PRODUCTION CO., L.L.C. ("Sterling") is the Debtor in Case No. 08-38123, which case is being jointly administered under the above-captioned bankruptcy case. Said Defendant commenced its bankruptcy case on December 23, 2008 (the "Petition Date") by filing a Voluntary Petition under Chapter 11 of Title 11 of the United States Code.

5. Defendant ROBERT CHARLES CHEATHAM ("Charles Cheatham") is one of the Debtors in Case No. 08-38124, which case is being jointly administered under the above-captioned bankruptcy case. Said Defendant commenced his bankruptcy case on December 23, 2008, by filing a Voluntary Petition under Chapter 11 of Title 11 of the United States Code.

6. Defendant PATRICIA LYNN CHEATHAM ("Patricia Cheatham") is one of the Debtors in Case No. 08-38124, which case is being jointly administered under the above-captioned bankruptcy case. Said Defendant commenced her bankruptcy case on December 23, 2008, by filing a Voluntary Petition under Chapter 11 of Title 11 of the United States Code.

Service of Process

7. Pursuant to Bankruptcy Rule 7004, Sterling may be served by mailing a copy of this Complaint and its accompanying summons to 675 Bering Drive, Suite 850, Houston, Texas 77057.

8. Pursuant to Bankruptcy Rule 7004, Charles Cheatham may be served by mailing a copy of this Complaint and its accompanying summons to 13531 Grand Masterpiece, Houston, Texas 77041.

9. Pursuant to Bankruptcy Rule 7004, Patricia Cheatham may be served by mailing a copy of this Complaint and its accompanying summons to 13531 Grand Masterpiece, Houston, Texas 77041.

Factual Background

10. In order to comply with state law requirements, Sterling induced Southwest Bank of Texas (whose name changed to Amegy in 2005) to issue two letters of credit in favor of the Texas Railroad Commission ("RRC") as beneficiary.

11. The first letter of credit was in the amount of $610,000.

12. The second letter of credit was in the amount of $100,000.

13. In order to collateralize the $610,000 letter of credit, Sterling pledged a certificate of deposit at Amegy Bank in the amount of $610,000.

14. In order to collateralize the $100,000 letter of credit, Sterling pledged a certificate of deposit at Amegy Bank in the amount of $100,000. In connection therewith, Sterling executed and delivered to Plaintiff that certain instrument entitled "Assignment of Deposit Account."

15. At all pertinent times prior to December 20, 2008, Sterling maintained a checking account at Amegy Bank (Account Number xxxx8959)(hereafter "Account 8959").

16. Although Sterling is a separate legal entity, and although Account 8959 is styled as Sterling's "operating account," the Cheathams voluntarily admit that they used Account 8959 to pay personal expenses. For example, during the month of December 2008, the following items cleared the account on the following dates:

3

> Wal-Mart, December 4, $1,242.16
> Gap, December 4, $290.46
> Ann Taylor, December 4, $89.00
> PayPal, December 12, $131.55
> Countrywide Home Mortgage, December 23, $1,717.98
> Toys R Us, December 24, $85.31
> ASC Mortgage, December 26, $2,079.43
> Wolf Camera, December 26, $1,114.94

17. In October 2007, the RRC ordered Sterling to plug Well No. 5 in the State Tract 194 Lease.

18. In August 2008, Sterling agreed to plug Well No. 5 on or before November 26, 2008.

19. Upon information and belief, Well No. 5 was not plugged by November 26, 2008. Upon information and belief, Well No. 5 was not plugged as of the Petition Date (December 23, 2008).

20. Prior to November 24, 2008, Charles Cheatham contacted Plaintiff on several occasions in an attempt to cash all or part of the $100,000 CD. Plaintiff explained to Cheatham that the entire CD had been pledged as collateral for the $100,000 letter of credit, and that the $100,000 CD could not be released unless and until the RRC returned the letter of credit to Plaintiff.

21. On or about November 24, 2008, Richard Bergner, an attorney representing Charles Cheatham, contacted Plaintiff to request a partial release of the $100,000 CD. Plaintiff told Bergner it could not discuss the matter without Charles Cheatham's permission.

22. On or about November 24, 2008, Bergner and Charles Cheatham jointly called Plaintiff and requested a partial release of the $100,000 CD. Plaintiff told Bergner and Charles Cheatham that the entire CD had been pledged as collateral for the Letter of Credit, and that the CD could not be released unless and until the RRC returned the letter of credit to Plaintiff. Charles Cheatham requested a copy of the collateral assignment, and Plaintiff faxed a copy of the collateral assignment to Charles Cheatham on November 25, 2008.

23. On or about December 11, 2008, Charles Cheatham faxed a handwritten note to Plaintiff in which he requested Plaintiff to release a portion of the $100,000 CD and deposit the proceeds into Account 8959.

24. On or about December 15, 2008, at Charles Cheatham's request, Plaintiff faxed copies of the $100,000 letter of credit and the collateral assignment to Richard Bergner.

25. On December 17, 2008, on account of Sterling's failure to plug Well No. 5 by the November 26, 2008 deadline, the RRC revoked Sterling's Organizational Report. On such date, the RRC mailed a letter to Sterling to advise Sterling of the revocation. That same day, the RRC faxed the letter to his attorney, Richard Bergner.

26. On December 17, 2008, the RRC issued two sight drafts to Plaintiff, one for $610,000 and another for $100,000. The sight drafts ordered Plaintiff to pay a total of $710,000 to the RRC.

27. On Friday, December 19, 2008, Plaintiff redeemed the $610,000 CD and the $100,000 CD and placed the total proceeds ($710,000) in its general ledger account.

28. On Saturday, December 20, 2008, Patricia Cheatham (later joined by Charles Cheatham) walked into Plaintiff's branch office in Copperfield and requested the redemption of the $100,000 CD from one of the tellers. The teller unknowingly released the $100,000 CD, and the proceeds ($100,024.78) were deposited into Account 8959.

29. At the close of business on Friday, December 19, 2008, the day before the $100,000 CD was redeemed, Account 8959 had a balance of $10,385.46.

30. On Saturday, December 20, 2008, Charles Cheatham withdrew $38,454.58, in cash, from Account 8959.

31. On Saturday, December 20, 2008, Patricia Cheatham withdrew $3,024.78, in cash, from Account 8959.

5

32. On Monday, December 22, 2008, Charles Cheatham cashed a check, payable to "Charles Cheatham," in the amount of $5,000.00.

33. At the close of business on Monday, December 22, 2008, Account 8959 had a balance of $48,468.17.

34. On Monday, December 22, 2008, Plaintiff wired $710,000 to the RRC in compliance with the RRC's sight drafts.

35. On Tuesday, December 23, 2008, to reverse the redemption of the $100,000 CD, Plaintiff charged $100,024.78 to Account 8959.

36. At the close of business on Tuesday, December 23, 2008, Account 8959 was overdrawn in the amount of minus $61,403.20.

37. As of the Petition Date, Plaintiff's loss was in the amount of $61,038.40.

### Exceptions to Dischargeability of Debt

38. Plaintiff is entitled to an order from the court excepting from discharge all of the debt owed to it by the Defendants, as described hereinabove. By incorporating the provisions of 11 U.S.C. §§ 523(a)(2)(A), a discharge under Chapter 11 does not discharge a debtor from any debt -

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

39. On Saturday, December 20, 2008, the day they requested the redemption of the $100,000 CD, both Patricia and Charles Cheatham knew (A) that the $100,000 CD had been pledged; (B) that the RRC had not returned the $100,000 letter of credit to Plaintiff; and (C) that Plaintiff had told the Cheathams and their attorney on more than one occasion that the $100,000 CD would not be released unless and until the RRC returned the $100,000 letter of credit to Plaintiff.

The Cheathams did not inform the bank teller that the $100,000 CD had been pledged. By failing to disclose the fact that the $100,000 CD had been pledged, the Cheathams intentionally misled the bank teller, who unknowingly redeemed the $100,000 CD. By requesting the redemption of the $100,000 CD, the Cheathams were tacitly representing to the bank teller that the CD was unencumbered and available for redemption. But for the fraud committed by the Cheathams in their individual and representative capacities, Plaintiff would not have released the $100,000 CD and would not have incurred the loss they sustained, which loss was in the amount of $61,038.40 on the Petition Date.

<u>Attorney's Fees</u>

40. It has been necessary for Plaintiff to hire the undersigned attorneys to pursue this matter. Accordingly, Plaintiff is entitled to recover reasonable attorney's fees and costs.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, AMEGY BANK, N.A., a creditor and party-in-interest, prays that upon the trial of this case, this Court:

1. Enter an order that all of the debts due to Plaintiff as described hereinabove are nondischargeable pursuant to 11 U.S.C. § 523;

2. Grant judgment in favor of Plaintiff and against Defendants, jointly and severally, for all of the debts due to Plaintiff as described hereinabove, and found to be nondischargeable, as well as for lawful pre-judgment and post-judgment interest and for reasonable attorney's fees and costs of Court; and

3. For all such other and further relief, both general and special, legal and equitable, to which Plaintiff may show itself justly entitled.

Respectfully submitted April 20, 2009.

/s/ James E. Cuellar
State Bar No. 05202345

        Wells & Cuellar, P.C.
        440 Louisiana, Suite 718
        Houston, Texas 77002
        (713) 222-1281 Telephone
        (713) 237-0570 Fax
        Email: jcuellar@wellscuellar.com